WESTERN TELEPHONE MFG. CO. et al. v. SWEDISH–AMERICAN TELEPHONE CO.

(Circuit Court of Appeals, Seventh Circuit.    October 4, 1910.    Rehearing Denied July 27, 1911.)

No. 1,685.

PATENTS (§ 328*)—INFRINGEMENT—TELEPHONE SWITCHBOARD.

The Fisk patent, No. 521,461, for a combined annunciator and spring-jack for use in telephone switchboards, covers an invention of novelty and merit, and is entitled to a range of equivalents which will fully protect it, but it is limited by its terms to a device having two elements, and is not infringed by a device having the old three-element structure.

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by the Western Telephone Manufacturing Company and others against the Swedish-American Telephone Company. De-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cree (163 Fed. 308) for defendant, and complainants appeal.   Affirmed.

R. S. Taylor and Josiah McRoberts, for appellants.

W. Clyde Jones, Keene H. Addington, Robert Lewis Ames, and Arthur B. Seibold, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

BAKER, Circuit Judge.   Appeal is taken from a decree adjudging that appellee's device is not an infringement of patent No. 521,461, June 19, 1894, to Fisk, assignor, for a combined annunciator and spring-jack for use in telephone switchboards.

Fisk's specification and claims are recited in Western Telephone Mfg. Co. v. American Electric Telephone Co., 131 Fed. 75, 65 C. C. A. 313.   For present purposes it is enough, beyond referring to that case, to set forth claim 2 as adequately describing the invention:

"The combination in a switchboard of an annunciator-drop adapted to hang in front of the jack and be lifted by the operator's plug as it is thrust into the jack, and a trigger or arm for catching it when so raised, and an electro magnet and its armature and connections whereby the support is drawn from engagement with the drop when the magnet is energized, as set forth."

In the decision above cited this court held that:

"Fisk was the originator of the principle of restoring the drop by the contact therewith of the plug as it enters the associated jack."

This record confirms us in the judgment that Fisk was the first and true inventor of the contactual principle of restoration.

Appellants correctly say that:

"Fisk's invention did not consist in bringing the drop and plug into juxtaposition, nor in restoring the drop by contact with the plug, but in both those things in combination."

Before Fisk's time the drop and the jack into which the plug is inserted had been combined in one structure which could be used as a unit in a switchboard.   In Rein's patent, No. 240,182, April 12, 1881, the drop and the jack were combined in a unitary device wherein the drop and its releasing magnet were placed above the jack and as close to it as could be done on account of the intermediate mechanism through which the plug by its thrust into the jack-opening mechanically restored the drop to its latched position.   Fisk placed his releasing magnet behind the jack, with the armature reaching over the jack to the drop hanging in front of the jack.   By these means, Fisk not only attained a greater degree of compactness than had thitherto been known (and possibly the acme of compactness), with resulting benefits in the assemblage of a switchboard, but he brought the drop and the jack opening into such a relation that the plug contactually, and not mediately, restored the drop.   Rein's structure did not contain a germ of the thought that the inthrust of the plug could be used as the direct, the immediate, the contactual means of restoring the drop. Rein's mechanical restoration required veritably, not colorably, the coaction of three elements—the plug, the intermediate mechanism, and

the drop. Fisk cut out all intermediate mechanism and accomplished his mechanical restoration by the coaction of two elements—the plug and the drop. This involved an idea wholly novel, and created a new point of departure for the art.

In disposing of the prior art, this court in the former case held that no exhibition or disclosure of earlier endeavors was either an anticipation of the Fisk claims or a limitation of them to less than their face value. The record now before us makes no stronger show, and we remain of the conviction that Fisk, being at the head of a new class, is entitled to a range of equivalency that will fully protect his actual invention.

But it was and is found that the prior art failed to limit Fisk's claims to less than their face value because Fisk, to avoid the prior art, properly limited his claims to the principle of contactual restoration—the principle of eliminating one of three elements and obtaining the result by the immediate interaction of the other two.

As in this suit, so in the former case the question of infringement is found to turn on the defendant's employment or nonemployment of the principle of contactual restoration. There the defendant raised the drop a little way above the jack-opening, so that the ordinary plug would not strike the ordinary drop; but made his plug thicker than the ordinary plug by putting a collar thereon and his drop thicker than the ordinary drop by putting a cam-shaped projection on its outer face. We said that it is "immaterial whether the contact is effected through having the plug reach up or the drop reach down or both." Neither projection had any function beyond serving as a defense in a lawsuit. The device, so far as obtaining mechanical restoration was concerned, was still a two-elements device. If a door is to be closed by manual contact, the order is obeyed whether a bare hand is pushed against a bare door or a padded glove upon the hand is pushed against the knob or other projection on the door.

At the hearing of an application for a temporary injunction in this suit, two forms of appellee's device were exhibited and counted on as infringements. In the first form, within the jack-part of the structure, two levers are pivoted. The plug on entering the jack-opening contacts with and moves the first lever, which thereupon contacts with and moves the second lever, which thereupon contacts with and moves the drop to its latched position. In the second form, within the jack-part of the structure, the rear end of a spring lever is secured to the magnet frame. At an intermediate point of the under side of the lever a roller is attached. The front end of the spring lever reaches to a point near the drop. The plug on entering the jack-opening contacts with and raises the roller. This movement of the roller flexes the spring lever, and thereupon the front end of the spring lever contacts with and moves the drop to its latched position. At the final hearing, and on this appeal, only the second form was relied upon as an infringement.

In the case of the adjudicated infringement, it was held that a thing reaching down from the drop so as to be "in front of the jack" and in the path of the plug was a colorable evasion of Fisk's claims covering his two-elements method of restoration. And, if the defendant

in that case had split his thickened drop into two layers, infringement would not have been avoided. True, the outer layer would constitute in a sense a lever interposed between the drop and the plug—a lever of the class wherein the power is applied between the fulcrum and the load. But the inner layer would itself be a lever of the same kind, and would be struck by the plug if the outer layer were removed and the haft of the plug enlarged to the extent of the thickness of the outer layer. In short, such outer layer, as an independent intermediate mechanism, would perform no mechanical function. The two layers might as well be put back into an integral drop. The device would still be a two-elements device.

Because Fisk invented the two-elements method of restoration is no reason why his assignees should attempt to reach back and monopolize the prior method of mechanical restoration by means of the veritable mechanical coaction of three elements. In appellee's devices, the two levers of the first form, and the spring lever and roller of the second form, are not either integrally or separably a part of either the plug or the drop. They are a fixed part of the jack construction. If they were to be made a fixed part of either the plug or the drop, the device would be inoperative. In both forms appellee employs Rein's team association of jack and magnet, and therefore fails to secure the degree of compactness due to Fisk's tandem association of jack and magnet. This, of course, would not escape infringement if appellee nevertheless availed itself of Fisk's "principle of restoring the drop by the contact therewith of the plug as it enters the associated jack." It furnishes at most only a sidelight on the origin of appellee's combined drop and jack. In appellee's first form the two levers are unmistakably the independent intermediate mechanism of the Rein patent. In the second form appellee has improved upon the Rein patent by making the spring lever with its attached roller do exactly the work, all the work, and only the work, that was performed by the two levers in effecting the mechanical restoration of the drop. That is, in both forms restoration is accomplished by the tip end of a lever striking the drop, as a lever, midway between its fulcrum and outer extremity, and then by pushing against the drop, and by sliding along the drop while pushing. If the tip end of the lever were not permitted to slide along the drop, if the lever were by soldering or otherwise made a part of the drop, the whole mechanism would be worthless. That is, in neither form is the drop "adapted to hang in front of the jack and be lifted by the operator's plug as it is thrust into the jack."

In certain forms of cars, the doors are shut by means of the conductor's or motorman's operation of a wheel or a lever. The door is not touched by the hand, but is moved by independent intermediate mechanism that is actuated by the hand. We should hardly call this a closing of the door by the contact therewith of the hand.

The decree is affirmed.